# United States Tax Court

T.C. Summary Opinion 2022-20

STEPHEN H. COLLINS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 14017-17S.                    Filed September 29, 2022.

————————

Stephen H. Collins, pro se.

*Emly B. Berndt*, *John D. Davis*, and *Nancy P. Klingshirn*, for respondent.

## SUMMARY OPINION

PARIS, *Judge*: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the Petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

Petitioner seeks review pursuant to section 6015(e)(1) of respondent's final determination with respect to petitioner's request for innocent spouse relief. Respondent granted relief under section 6015(c) for an understatement of tax on petitioner's jointly filed 2013 return but denied a request for a refund. Petitioner filed a Petition with the Court and requests a refund of amounts he paid to his former spouse and she

———————————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

remitted in payment of the liability. Petitioner filed a Petition with the Court on June 26, 2017.

*Background*

Petitioner resided in Ohio when he filed the Petition in this case. Petitioner's former spouse, Arnette G. Poore, was provided notice of her right to intervene pursuant to Rule 325(a). Ms. Poore filed a Notice of Intervention but was dismissed as intervenor for lack of prosecution by Order dated September 23, 2019.

Petitioner and Ms. Poore were married from 1980 until their divorce in 2014. They timely filed a joint tax return for 2013, on which they reported a tax liability of $33,044 and withholding of $27,440. There was an underpayment of tax at the time of filing of $5,604, excluding penalties and interest.

Pursuant to the divorce decree issued by the Stark County Domestic Relations Court on October 3, 2014, petitioner was ordered to pay the underpayment of $5,604. Respondent's certified transcript of petitioner's account reflects that the underpayment was satisfied by the end of 2015.

On November 16, 2015, respondent issued a notice of deficiency to petitioner and Ms. Poore, reflecting an increase in tax for 2013 of $9,549, a withholding credit of $6,681, and a penalty of $574 (collectively, understatement). Ms. Poore's unreported withdrawal of $33,408 from the Ohio Deferred Compensation Plan and unreported interest income of $23 from her CSE Federal Credit Union account gave rise to the notice of deficiency. Although the withdrawal occurred before petitioner and Ms. Poore filed for divorce, petitioner was unaware of the withdrawal until he received the notice of deficiency from respondent.

In April 2016 petitioner submitted Form 8857, Request for Innocent Spouse Relief, to the Internal Revenue Service. Respondent issued a final determination denying relief for the underpayment under section 6015(f), granting full relief from the understatement under section 6015(c), and denying petitioner's refund request.

On August 10, 2016, the Domestic Relations Court ordered Ms. Poore to pay the additional tax due for 2013, including any penalties and interest. The Domestic Relations Court also ordered petitioner to reimburse Ms. Poore for one-half of the additional tax by increasing his

spousal support payment by $500 per month until his share was fully paid, as follows:

> Wife is to pay any remaining Federal and State income tax due and owing for tax year 2013, including any penalties and interest. She is to fully account for the total amount expended and provide that accounting to Husband. Husband is to reimburse her for his one half share of the additional Federal and State tax including interest and penalties by paying additional spousal support. Husband is to reimburse Wife at the rate of $500.00 per month, beginning on September 1, 2016, and continuing for six months for a total of $3,000.00. This additional $500.00 per month is non-taxable to the Wife and non-deductible to the Husband. If Husband's share of the taxes, interest and penalties is less than the $3,000.00 ordered paid herein, Wife is to reimburse him the difference within 30 days after the final tax liability is determined. If Husband's share of the taxes, interest and penalties is more than the $3,000.00 ordered paid herein, the additional $500.00 per month will recommence until his share has been fully paid. It would behoove both parties to cooperate fully in filing an amended return with the State of Ohio so that the liability to the State of Ohio can be fixed as soon as possible. This will help prevent an overpayment of Husband's spousal support.

Petitioner paid the additional $500 beginning September 1, 2016, and continuing for seven to nine months, until the Domestic Relations Court ordered the increased payment to cease.

Ms. Poore made a payment of $3,945.14 to satisfy the 2013 joint income tax liability on November 23, 2016, directly to the Internal Revenue Service. The record does not indicate whether an amended 2013 Ohio State tax return was filed or what the additional liability on that return was.

Petitioner timely filed a Petition in which he requests a refund of $3,000 for amounts paid to Ms. Poore that were used to satisfy the liability.

*Discussion*

Married taxpayers may elect to file a joint federal income tax return. § 6013(a). If a joint return is made, generally each spouse is jointly and severally liable for the entire tax due on their aggregate income for that year. § 6013(d)(3). In certain circumstances, however, section 6015 allows a spouse to obtain relief from joint and several liability. § 6015(a). Under section 6015(a), a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f).

A taxpayer may seek relief from joint and several liability by raising the matter as an affirmative defense in a petition for redetermination of a deficiency or, as in this case, by filing a stand-alone petition challenging the Commissioner's final determination denying the taxpayer's claim for such relief (or his failure to rule on the taxpayer's claim within six months of its filing). *See* § 6015(e)(1); *Maier v. Commissioner*, 119 T.C. 267, 270–71 (2002), *aff'd*, 360 F.3d 361 (2d Cir. 2004).

In determining whether a taxpayer is entitled to relief under section 6015(b), (c), or (f), we apply a de novo standard and scope of review.[2] *Porter v. Commissioner*, 132 T.C. 203, 210 (2009). Petitioner generally bears the burden of proving that he is entitled to equitable relief under section 6015(f). *See Porter*, 132 T.C. at 210; *see also* Rule 142(a)(1).

Respondent determined, and petitioner agrees, that petitioner is not entitled to relief with respect to the underpayment on the 2013 return. Petitioner does not dispute that determination.

With respect to the understatement, respondent granted relief under section 6015(c) but denied petitioner's refund request. Petitioner argues that, in addition to relief from joint and several liability, he should be entitled to a refund of $3,000 for the amounts he was ordered to pay, and did pay, to Ms. Poore in satisfaction of the liability. Petitioner contends that, because he was ordered by the Domestic Relations Court to pay additional spousal support as reimbursement to Ms. Poore for

---

[2] Because petitioner filed his Petition before July 1, 2019, section 6015(e)(7) does not apply to this case. *See Sutherland v. Commissioner*, 155 T.C. 95, 104 (2020).

one-half of the liability with respect to the understatement, he effectively paid the tax himself.

Section 6015(g)(1) provides: "Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section." Section 6015(g)(3) limits the availability of a credit or refund, providing that "[n]o credit or refund shall be allowed as a result of an election under subsection (c)." Thus, petitioner may only be eligible for a refund if he is entitled to relief under section 6015(b) or (f).

The Court need not reach that question, however, because petitioner has not demonstrated entitlement to a refund. Even assuming arguendo that petitioner is eligible for relief under section 6015(b) or (f), he would not be entitled to a refund because he did not remit any tax payments to respondent with respect to the understatement. Before any taxpayer may be allowed a refund or credit, there must be a determination that the taxpayer made an overpayment. *Minihan v. Commissioner*, 138 T.C. 1, 8 (2012); *Cutler v. Commissioner*, T.C. Memo. 2013-119, at \*27. A taxpayer makes an overpayment if he remits funds to the Secretary in excess of the tax for which he is liable. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947); *Minihan*, 138 T.C. at 9. To prove that he has made an overpayment, the requesting spouse must establish that he (and not the nonrequesting spouse) provided the funds for the overpayment, and that the payments were not made with the joint return and were not joint payments or payments that the nonrequesting spouse made. *Minihan*, 138 T.C. at 9 (and cases cited threat); *Cutler*, T.C. Memo. 2013-119, at \*28; s*ee also* Rev. Proc. 2013-34, § 4.04, 2013-43 I.R.B. 397, 403.

Pursuant to the order of the Domestic Relations Court dated August 10, 2016, Ms. Poore was responsible for payment of the liability with respect to the understatement due and owing, and she paid that amount by check on November 23, 2016. Petitioner was ordered to reimburse Ms. Poore for a portion of that liability and any related state tax liability in the form of increased spousal support payments, which he began making on September 1, 2016, and continued to make for seven to nine months. Petitioner did not make any payments directly to the Internal Revenue Service, and, indeed, most of his increased spousal

support payments were not paid until after the liability was satisfied.[3] Accordingly, petitioner cannot be said to have made or been the source of an overpayment. Petitioner's request for refund is denied.

The Court has considered all arguments made in reaching its decision and, to the extent not mentioned herein, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[3] Even if, given the fungible nature of money, petitioner can be said to have indirectly paid a portion of the 2013 federal tax liability, the record is silent on whether any additional Ohio state tax was due (and if so, what amount) or whether petitioner received any reimbursement from Ms. Poore, as ordered by the Domestic Relations Court.